Slip Op. 11-116

# UNITED STATES COURT OF INTERNATIONAL TRADE

|  |  |
|---|---|
| BP OIL SUPPLY COMPANY, | |
| Plaintiff, | |
| v. | Before: R. Kenton Musgrave, Senior Judge<br>Court No. 04-00321 |
| UNITED STATES, | |
| Defendant. | |

**OPINION**

[Denying cross-motions for summary judgment on claims for "substitution unused merchandise drawback" of certain customs duties, taxes and fees paid on importations of crude petroleum.]

Decided: September 16, 2011

*Galvin & Mlawski* (*John Joseph Galvin*), for the plaintiff.

*Tony West*, Assistant Attorney General; *Barbara S. Williams*, Attorney-In-Charge, International Trade Field Office, Commercial Litigation Branch, Civil Division, U.S. Department of Justice (*Marcella Powell*), Office of the Assistant Chief Counsel, International Trade Litigation, U.S. Customs and Border Protection (*Beth Brotman*), of counsel, for the defendant.

Musgrave, Senior Judge: As previously observed, *see* slip opinion 10-92, 34 CIT ___ (Aug. 13, 2010), the parties since joinder have pursued settlement negotiations that have proven unfortunately elusive. They now seek resolution via cross-motions for summary judgment. Based upon the papers, affidavits and exhibits submitted, both motions must be denied.

Court No. 04-00321                                                                                                    Page 2

*Background*

This action contests denial of customs protest[1] numbers 5301-03-100333 and 5301-04-100162. These cover 27 claims for "substitution unused merchandise drawback" seeking refunds of up to 99 percent of the duties, taxes and fees paid on the imported merchandise alleged therein. *See* 19 U.S.C. § 1313(j)(2). Such claims require establishing that (1) the substitute merchandise (for export) is commercially interchangeable with the imported merchandise, (2) the substitute merchandise is either exported or destroyed under supervision, and (3) before such exportation or destruction (i) the substitute merchandise was not used within the United States and (ii) was in the possession of the party claiming drawback. *Id*. The substitute merchandise in this instance is Alaska North Slope ("ANS"), an American Petroleum Institute ("API") class III crude petroleum, and the imported merchandise consists of various foreign API class III crudes entered between 1994 and 1996. The drawback entry claims were filed between 1998 and 1999.

U.S. Customs and Border Protection ("Customs") Headquarters Ruling ("HQ") 230098 effectively denied both protests after concluding BP Oil Supply Company ("BP"), as claimant, had failed to establish that the imported crudes were commercially interchangeable with ANS, *i.e.*, BP had provided neither evidence that a reasonable hypothetical competitor of the exported ANS would purchase crude oil based on the "API gravity"[2] alone, nor evidence supporting the values of the exported ANS crudes or the physical/chemical characteristics of the imported

---

[1] *See* 19 U.S.C. § 1515.

[2] Apparently uncontested is that "API gravity" forms an arbitrary scale calibrated in terms of degrees mathematically related to specific gravity, that it expresses the gravity or density of liquid petroleum products, that it is usually determined by hydrometer, and that reliance upon it determines which of the four API classes describes particular crudes. *See* Pl.'s Mot. for Summ J. at 8.

crudes, or evidence of their commercial descriptions in contracts and purchase orders. BP timely initiated suit here, *see* 28 U.S.C. 2636(a), invoking jurisdiction pursuant to 28 U.S.C. § 1581(a) and seeking, according to the complaint, "reliquidation of the entries at bar for drawback of any duty, tax, or fee imposed under Federal law upon entry or importation, including Column I duties, Merchandise Processing fees, Harbor Maintenance tax and Environmental tax, together with interest thereon as provided by law[.]" Complaint at 6.

*Standard of Review*

Denial of a protest is reviewed *de novo*. *See, e.g., California Indus. Products, Inc. v. United States*, 28 CIT 1652, 350 F. Supp. 2d 1135 (2004). In such review, the decision of Customs is presumed correct, "[t]he burden of proving otherwise shall rest upon the party challenging such decision[,]" 28 U.S.C. § 2639(a)(1), and the court's role is to reach the correct result. *Jarvis Clark Co. v. United States*, 733 F.2d 873, 878 (Fed. Cir. 1984). *See, e.g., Precision Specialty Metals, Inc. v. United States*, 24 CIT 1016, 116 F. Supp. 2d 1350 (2000).

On a motion for summary judgment under Rule 56, if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law[,]" then the motion should be granted. USCIT R. 56(c). Once the movant "set[s] out facts that would be admissible in evidence" by way of "a separate, short and concise statement, in numbered paragraphs, of the material facts as to which the moving party contends there is no genuine issue to be tried" that is "followed by citation to evidence which would be admissible[,]" USCIT R. 56(e), (h)(1) & (h)(4), then pursuant to Rule 56(e)(2), the opposing party is likewise obliged to "set

Court No. 04-00321                                                                                                   Page 4

out specific facts showing a genuine issue for trial[,]" together with, as necessary, a "short and concise statement of additional material facts as to which it is contended that there exists a genuine issue to be tried" pursuant to this Court's Rule 56(h)(2). In other words, if the movant satisfies its Rule 56 burden of production under USCIT R. 56(h)4), the burden shifts to the opponent to persuade that a genuine dispute over material facts exists, or else summary judgment is appropriate. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). In such consideration, reasonable inferences are to be construed in favor of the motion's opponent. *See, e.g., Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986).

*Discussion*

I

At the outset, the government argues the court lacks subject matter jurisdiction over drawback claims involving Qua Iboe, Gullfaks, Guafitas, or Zaire crude imports because the protests "specifically reference" none of these and may not now be amended.[3] *See* Def.'s Mot. to Dismiss and Cross Mot. for Summ. J. ("Def's Mot. Br.") at 5-8. The implicit assumption is that drawback protests must describe the import merchandise with exacting terminology or trade names. The argument is wide of the mark, as it is based upon a stricter standard of specificity than is required under law for purposes of a jurisdictional inquiry.

---

[3] *See* 19 U.S.C. § 1514(c)(1) (protestant required to "set forth distinctly and specifically ... each category of merchandise affected by" Customs' denial of a drawback claim); *see also* 19 C.F.R. § 174.13 (a protest shall contain, *inter alia*, a "specific description of the merchandise affected by the decision as to which protest is made" and the "nature of[ ] and justification for the objection set forth distinctly and specifically with respect to each category, payment, claim, decision or refusal"); 19 C.F.R. §174.14 (amendment of protests); 19 C.F.R. §174.12(e) (period for filing or amending).

The protests themselves each contain an attachment incorporating respective lists of specific drawback entry claim numbers. The attachments frame BP's objection as being with respect to Customs's decision "denying § 1313(j)(2) substitution unused merchandise drawback of any duty, tax, or fee assessed *upon the designated imported API Class III crude oil the subject of the above-referenced entries* upon the exportation of Alaskan North Slope API Class III crude oil." *E.g.*, Protest No. 5301-03-100333, attachment at 1 (italics added). *See* Court File. Jurisdiction lies over whatever crudes are encompassed by the import entries that are encompassed by the drawback entries that are the intended objects of BP's stated protests – and that are known by whatever name traded in the industry.

Customs' protest denials were based upon two drawback entry claims, for which Customs determined "the merchandise at issue is 'class III' petroleum crude oil" whose "countries of origin . . . are Nigeria, Angola and Zaire." HQ 230098. The crude types are discernible from complete examination of the entire drawback entry claim papers. *See, e.g.*, Court File (Claim Numbers AA6-0303909-7 & AA6-0304548-2, *i.e.*, the two claims encompassed by HQ 230098 ).[4] Although not typically identified on the import entry summaries, the crudes' types or names typically appear by way of the commercial laboratory or gauger reports that are part of the drawback entries. As a whole, thus, each protest is "sufficient to notify the collector of its true nature and character, to the end that he might ascertain the precise facts, and have an opportunity to correct the mistake and cure the defect if it was one that could be obviated." *Davies v. Arthur*, 96 U.S. 148, 151 (1877)

---

[4] Random examination of several others reveals some of the shipments purport to consist of crude from a single oil field source while others purport to consist of a blend. *See, e.g.*, Drawback Entry No. AA6-0304560-7 (incorporating by reference, *e.g.*, Import Entry No. 424-0023502-6 ("Zaire and Rabi blend")).

(citations omitted). The parties may clarify, but they are statutorily precluded by liquidation from assertion at odds with whatever was relevantly claimed upon entry with respect to those importations, *e.g.*, as to merchandise description or country or terminal or port of origin, *et cetera*. *See, e.g., United States v. Utex International Inc.*, 857 F.2d 1408, 1412 (Fed. Cir. 1988); *see also* 19 U.S.C. § 1514(a) (finality of liquidation); 19 C.F.R. § 159.1 (defining liquidation); 19 C.F.R. § 159.2 ("[a]ll entries covering imported merchandise . . . shall be liquidated"). "However cryptic, inartistic, or poorly drawn a communication may be, it is sufficient as a protest for purposes of [19 U.S.C. § 1514] if it conveys enough information to apprise knowledgeable officials of the importer's intent and the relief sought." *Mattel v. United States*, 72 Cust. Ct. 257, 262, 377 F. Supp. 955, 960 (1974).

II

Both parties argue entitlement to summary judgment on the merits of BP's customs duty drawback claims. Neither will prevail.

A

BP's motion contends no material facts are genuinely disputed and then proceeds to argue solely that the designated substitute export merchandise is commercially interchangeable with the imported merchandise as a matter of law, and that Customs' stated reason for denial of the protests is therefore incorrect. The government concedes that the imports of Cano Limon, Mesa, and Mesa 30 crudes are commercially interchangeable with ANS, *see* Def.'s Mot. to Dismiss and Cross Mot. for Summ. J. ("Def's Mot. Br.") at 2 n.1, but it disagrees the exported ANS can be said to be commercially interchangeable with the other imported crudes at issue as a matter of law. Specifically briefed among the government's concerns are the following: there has been no finding

on the record of which crudes were actually imported;[5] BP has not established a nexus between the Louisiana Offshore Oil Port ("LOOP")[6] standards and commercial interchangeability; BP has not addressed the significance of the apparently undisputed fact that ANS cannot satisfy the New York Mercantile Exchange ("NYMEX") light sweet crude contract (unlike Bonny Light and Qua Iboe crude), or the fact that ANS apparently cannot be commingled with sweet crude at the Strategic Petroleum Reserve; there is no indication (let alone finding) that BP even imported Oriente crude; and BP does not reconcile its claims with respect thereto in any event, since the assay of Oriente that BP produced apparently shows an API gravity of 23.3, indicating that Oriente is not even an API class III crude and therefore falls outside BP's "all API class III crudes are commercially interchangeable" argument. *See, e.g.*, Def.'s Reply at 9-17.

For its part, BP's presentment does not persuade as to the absence of genuine dispute over the commercial interchangeability of the exported ANS and the imported crudes. In particular, BP does not point to any evidence that would be admissible to show, indisputably, that a reasonable

---

[5] The government also claims the type of crude and amount unloaded cannot be ascertained with respect to drawback entry AA6-0303908-9 due to discrepancy between what was invoiced and what was reported on a certain (unspecified) import entry. *See* Reply Mem. in Further Support of Def.'s Mot. to Dismiss and Cross Mot. for Summ. J. ("Def.'s Reply") at 10 n.2. The court was eventually able to glean that the discrepancy concerns a certain "invoice" (assuming *arguendo* that is what the relevant document signifies) of "Medium" crude and the declared discharge of certain "Bonny Medium" crude in import entry number BQ12000074-1. *See* Pl.'s Reply . . . to Def's Cross-Mot. for Summ. J. ("Pl.'s Reply"), Collective Exhibit "A." And the claimed amount of drawback from the particular import entry is less than both figures. *Cf. id.* Such discrepancies cannot be resolved without making findings of fact, which obviously renders summary judgment thereon inappropriate, although it may also be observed that the total net U.S. barrels of ANS claimed to have been exported equate to the total net number of barrels of imported crudes for purposes of drawback entry AA6-0303908-9 as a whole.

[6] *See generally Marathon Oil Company v. United States*, 24 CIT 211, 93 F. Supp 2d 1277 (2000).

hypothetical competitor would purchase crude oil based on API gravity categories alone. In particular, BP's reference to an October 2, 2009 report, entitled "Relative Refining Values" and prepared by one of the government's expert witnesses, does not establish, indisputably, "that the difference in relative refining value between ANS and the imported crudes at bar [*i.e.* plus or minus 8%] was . . . *clearly within an acceptable range to support a finding of commercial interchangeability.*" See Pl.'s Mot. for Summ J. at 6, 14, & Ex. "B" (italics added). That is to say, BP points to no "would be admissible" evidence showing such a range as indisputably "acceptable" for purposes of commercial interchangeability.

As the foregoing illustrates, commercial interchangeability for purposes of 19 U.S.C. § 1313(j)(2) drawback is not ordinarily susceptible to summary judgment in the absence of agreement among the parties as to salient facts. *See, e.g., Pillsbury Co. v. United States*, 27 CIT 1628 (2003); *Texport Oil Co. v. United States*, 22 CIT 118, 1 F. Supp. 2d 1393 (1998) ("*Texport*"). Indeed, regarding *Texport* the Court of Appeals for the Federal Circuit rather opined the obvious:

> . . . "[C]ommercially interchangeable" must be determined objectively from the perspective of a hypothetical reasonable competitor; if a reasonable competitor would accept either the imported or the exported good for its primary commercial purpose, then the goods are "commercially interchangeable" according to 19 U.S.C. § 1313(j)(2).
>
> * * *
>
> Whether two particular sets of merchandise are "commercially interchangeable," under the objective standard we discern above, *raises a factual question*. Evidence relevant to this question would, of course, include "governmental standards and recognized industrial standards, part numbers, tariff classification, and relative values. *See, e.g.*, H.R. Rep. No. 103-361, at 131 (1993), *reprinted in* 1993 U.S.C.C.A.N. 2552, 2681. This analysis might also include evidence of arms-length negotiations between commercial actors, the description of the goods on the bills of sale or invoices, *see Texport*, 1 F. Supp. 2d at 1398, as well as other factual evidence presented by the parties that the Court of International Trade considers relevant.

*Texport Oil Co. v. United States*, 185 F.3d 1291, 1295 (Fed. Cir. 1999) (italics added; citation omitted).

      Based on the parties' submissions, there is genuine dispute over commercial interchangeability requiring trial. BP's motion for summary judgment will therefore be denied.

B

      As mentioned, the movant on summary judgment bears the burden of proving a lack of genuine dispute over material facts by pointing to and, as necessary, permitting preliminary judicial examination of the evidence that supports its assertion(s). *See* USCIT R. 56(d)–(h). Broadly speaking, that is accomplished through precision, not generality. Here, however, neither party enlightens as to its respective motion with regard to certain drawback elements of 19 U.S.C. § 1313(j)(2)(C).

      Among those elements, the government admits that "exportation" is not in genuine dispute, but it contends entitlement to summary judgment on what appears to be an argument that BP's *prima facie* case cannot prove satisfaction of the statutory requirements of "non-U.S.-use prior to exportation" and "possession prior to exportation" of the substitute export ANS crude. *See* 19 U.S.C. § 1313(j)(2)(C)(i); Pl.'s Statement of . . . No Genuine Issue to Be Tried ¶¶ 9, 12; Def.'s Resp. to Pl.'s Statement of . . . No Genuine Issue to Be Tried ¶¶ 9, 12; Def's Mot. Br. at 15-16; Def.'s Reply at 9-11. Responding, BP argues (1) the government does not deny the "probative value" of the documents provided during discovery, (2) such evidence "would be admissible" to prove the elements of non-U.S.-use and possession prior to exportation, and (3) those elements should be "deemed admitted by virtue of the [g]overnment's failure to deny the same and/or cite to

controverting evidence." Pl.'s Reply at 16. Apart from such generality, BP addresses the element of non-U.S.-use only cursorily, in a footnote that declares there is no practical or even conceivable use to which ANS crude could be put that would result in its transformation or reconstitution into ANS crude for export. *See* Pl.'s Reply at 16 n.6.

That may well be true, but it also amounts to counsel's testimony, and whether proof of a negative is problematic, the inference BP here calls for goes beyond what is appropriate for judicial notice, requiring the type of fact-finding that is inappropriate to summary judgment. *See, e.g.*, *United States v. Exxon Corp.*, 773 F.2d 1240, 1310 (Fed. Cir. 1985) (discussing unauthorized judicial notice of underlying facts). For that matter, the element of possession prior to exportation may be demonstrated by "ownership while in bailment, in leased facilities, in transit to, or in any other manner under the operational control of, the party claiming drawback.[,]" 19 U.S.C. § 1313(j)(2)(C)(ii), but BP does not enlighten as to the specific evidence that supports its contention that this element is not genuinely disputed.

For its part, the government, both in support of its motion for summary judgment and to contradict BP's claim that material facts are not in genuine dispute, points to Defendant's Exhibit "P"[7] and declares that "[t]hose documents, on their face, do not show that the exported [ANS] was not used in the United States and was in BP's possession." Def.'s Reply at 10 n.2. The government provides little further explanation, and no pinpoint citation within said Exhibit "P" to support this position. The assertion is therefore "facially" insufficient to warrant summary judgment.

---

[7] The government explains that Defendant's Exhibit "P" is an excerpt of the plaintiff's "Collective Attachment 'A'" to the plaintiff's July 2007 response to paragraph 3 of the defendant's first set of interrogatories. It purports to pertain to drawback entries AA6-0303685-3 and AA6-0303910-5.

The assertion is also questionable. Among the Exhibit "P" documentation, some arguably pertain to the disputed drawback requirements. These include copies of original signed and dated substitution affidavits prepared by or on behalf of the drawback claimant certifying, *inter alia*, that the substitute export merchandise was "not used within the United States" and was "in [the affiant's] possession according to 19 U.S.C. § 1313(j)(2)," and that records are maintained for verification of those assertions. *See* ECF No. 73-1, pp. 3, 33. In addition, there are copies of export bills of lading pertaining to the Exhibit "P" drawback entries. *See id.*, pp. 27, 28, 44, 47, 48. These declare receipt of a specific quantity of "Alaska North Slope Crude Oil" that is "shipped . . . by" BP for delivery "unto [same], or order" although they are also stamped "non-negotiable." They each also evince an ink-stamp copy declaring "Validated . . . U.S. Customs Valdez, Alaska" on specific (and relative) dates, and an ink-stamp copy further declaring "These commodities, technology and software were exported from the United States in accordance with the Export Administration Regulations. Diversion contrary to U.S. law prohibited." There are also copies of laboratory or gauger reports corresponding to the quantities listed on the export bills of lading.

It is inappropriate on summary judgment for the court to make findings of fact thereon, and in the absence of the parties' guidance it is also difficult for the court to make sense of the evidence that "would be admissible" in any event. *Cf. Holtz v. Rockefeller & Co., Inc.*, 258 F.3d 62, 74 (2d Cir. 2001) (Rule 56 is designed "to streamline the consideration of summary judgment motions by freeing district courts from the need to hunt through voluminous records without guidance from the parties"). It may at least be said at this point, however, that the government's characterization of what the documents in Defendant's Exhibit "P" "facially" purport is

Court No. 04-00321 Page 12

questionable.[6] Trial will test the admissible evidence on whether the exported ANS was not used in the United States prior to exportation and in the drawback claimant's possession prior to exportation, and the government's motion for summary judgment will be denied.

III

The government also moves for summary judgment on the issue of environmental tax drawback on the ground that BP has not proffered that it ever paid such taxes. The government argues the "quantum" of proof required to support BP's drawback claims for environmental taxes at this stage "should be no less than that required by Customs," which now requires (1) copy of the tax return, including IRS Forms 720 and 6627, (2) tax worksheet listing the petroleum products on which the tax was paid, (3) the claimant's certification that the submitted documents are true copies

---

[6] As an aside, the government also argues that BP does not explain how the documents provided in discovery "establish a chain of custody" of the ANS. Def.'s Reply at 10-11 & n.2. This position, however, is at odds with that of Customs, in that the relevant customs regulation has only required showing non-U.S.-use and possession of the substitute export merchandise "at some time" during the 3-year period after importation of the designated import merchandise. *See* 19 C.F.R. §§ 191.32(b)&(d)(1) (1998–2010). Also notable, although not relevant to *de novo* consideration here, is that Customs' own consideration of the bills of lading, gauger reports, and substitution affidavits provided with each drawback claim do not indicate any dissatisfaction with BP's production on its burden of proving non-U.S.-use or possession prior to exportation. *See* Court File. As mentioned, Customs rejected the claims on the basis of a lack of commercial interchangeability between the exported ANS and the imported crudes, not on the basis of the foregoing documents' probity on those section 1313(j)(2) issues. Further, an internal Customs' directive requires notification to the protestant if the protest is missing vital information and provision of 30 days to remedy the problem. *See* Customs Directive 099 3550-065 (Aug. 4, 1993); *see also Estee Lauder, Inc. v. United States*, Slip Op. 11-23 at 13, 2011 WL 770001 at 7 (2011); *Customs Protest/Petition Processing Handbook* (Customs Pub. HB 3500-08A Dec. 2007), at 9. There is no indication this directive was not being followed at the time; the only notation of "concern," on some of the drawback claims, was that some copies of the bills of lading BP's agents had submitted had not been certified as "true copy" of the originals – which minor certification task may be accomplished "by the exporter, claimant, or authorized agent" in any event. *Cf.* Court File (August 1998 Form Letter, "Incomplete Drawback Claim Rejection," Dep't of Treasury, U.S. Customs Service).

of the tax returns on the petroleum products that are the subject of the drawback claim, and (4) written certification that the claimant neither has nor will claim a refund, credit, or adjustment of the tax payment reflected on the documents. *See* Def's Reply at 7-8. BP complains that it already provided copies of its federal excise tax returns in discovery last year (June 2010), and that it received no demand for certified copies of BP's returns or certification that BP has not and will not claim a refund, credit, or adjustment of the tax payments in issue, *et cetera*, until the government filed its cross-motion. The plaintiff thus argues the government's "demand" at this point should be deemed waived. In reply, the government simply states that Customs' revised procedure merely embodies the foundation and authentication requirements of this Court's Rule 56(e) and Federal Rule of Evidence 901(a), although the government admits to receiving copies of BP's excise tax returns during discovery.

Be all that as it may, BP's environmental tax claims are derivative, depending upon the customs duty drawback claims. *See, e.g., Texport*, 22 CIT at 126-27, 1 F. Supp. 2d at 1401. It is premature to opine thereon, including the "quantum" of proof necessary for BP to satisfy its burden of proof. The government's motion will therefore be denied, without prejudice. *See* 28 U.S.C. § 2640(a)(1) (court makes determinations upon the basis of the record made before it).

IV

Lastly, BP's complaint seeks drawback of merchandise processing fees ("MPFs") allegedly paid on the imports of the foreign crudes at issue. BP also moves for leave to file a sur-reply and for leave to file an un-redacted blank Customs Form 7539 showing that at the time only the amount of "duty paid" was required to be calculated, both of which motions the government

Court No. 04-00321                                                                                           Page 14

opposes. As with the environmental tax issue, the MPF drawback claims are derivative and may be obviated by trial, but rather than hold the supplemental motions and the contents thereof in abeyance, they will be allowed in anticipation of aiding the court's understanding, as might become necessary.

In passing, however, the court notes the government's argument in part that BP first raised its claims for MPF drawback in its protests and therefore the protests amount to admission that "complete" claims for drawback were never filed within the 3-year statute of limitations, *see* 19 U.S.C. § 1313(r)(1), including "correct calculation" of total drawback, *see* 19 C.F.R. § 191.51(b); therefore, the government argues, the drawback claims *in their entirety* (for customs duties, taxes and fees) must be dismissed on the authority of *Aectra Refining and Marketing, Inc. v. United States*, 565 F.3d 1364 (Fed. Cir. 2009). Even apart from the chilling effect of such a "gotcha" interpretation of *Aectra* on drawback claims involving both undisputed aspects (*e.g.* customs duties paid) and arguable points of law or fact (with respect to other drawback elements, *e.g.*, fees or taxes), the government's position is patently absurd and must be rejected.

*Conclusion*

As a whole, the state of the record is such that "a reasonable jury could return a verdict for the nonmoving party" on the issues of commercial interchangeability and non-U.S.-use prior to exportation and possession prior to exportation. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The parties' cross-motions for summary judgment on the issues thus far briefed must therefore be denied. A separate order reflecting the foregoing will issue.


Dated: September 16, 2011                         /s/ R. Kenton Musgrave
       New York, New York                         R. Kenton Musgrave, Senior Judge